IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DONALD COLE,                          )
                                      )
            Plaintiff,                )
                                      )
    v.                                ) Civ. Action No. 10-088-GMS
                                      )
COMMISSIONER CARL DANBERG,            )
et al.,                               )
                                      )
            Defendants.               )

## MEMORANDUM

The plaintiff Donald Cole ("Cole"), an inmate at the James T. Vaughn Correctional

Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983 and the

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a).

(D.I. 1.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to

28 U.S.C. § 1915. (D.I. 11.)

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The case proceeds on the second amended complaint filed on March 14, 2012. (D.I. 47.)

The second amended complaint raises claims regarding Cole's right to practice his religion.  Cole

claims: (1) he is denied his right to observe Islamic holidays; (2) the Islamic community is not

allowed to raise funds; (3) he is denied his right to congregational prayers; and (4) there is

religious discrimination.

The remaining defendants move for summary judgment on the grounds that:  (1) they are

immune from suit for the claims raised against them in their official capacities by reason of the

Eleventh Amendment; (2) Cole failed to exhaust his administrative remedies; (3) the claims are

barred by the statute of limitations; and (4) Cole failed to establish constitutional and RLUIPA

violations.  On January 24, 2014, the court gave Cole until on or before February 24, 2014 to

respond to the motion for summary judgment.  (D.I. 70.)  Cole was advised that the court would

rule on the papers submitted to the court if he did not file a response.  Cole did not file a response

to the motion.

A.     **The Second Amended Complaint**

The second amended complaint (D.I. 47) alleges as follows:  From 1975 until 2004, the

Islamic community was permitted to observe two Islamic holidays, Eid al-Fitr (the end of

Ramadan) and Eid al-Adha (commemorates the sacrifice of Ishamel by Abraham), with a "feast".

(*Id.* at ¶ 3.I.)  In 2004, the defendant Ron Hosterman ("Hosterman") implemented procedures that

changed the manner in which the holidays were observed.  (*Id.* at ¶ 3.I.A.)  Visitors were no

longer allowed to bring in outside food and changes were made to the meal.  (*Id.*)  Two years

later in 2006, Hosterman stopped the practice of serving cake and juice during religious

observances but allowed the Islamic community to observe the holiday by attending evening

chow as a group and having a special visit with their families.  (*Id.* at ¶ 3.I.B.)  When the

defendant Perry Phelps ("Phelps") became the VCC warden, the visits were discontinued.[1]  (*Id.*)

Neither the cake and juice, nor the family visits, are related to observance of the religious

holidays.  (*Id.*)  The matter of religious holidays was appealed to Phelps, along with a written

proposal, but the proposal was denied.  (*Id.* at ¶ 3.I.C.)  The proposal was also submitted to the

defendant Chaplain Frank Pennell ("Pennell") by Inman Roderick Butler.  (*Id.* at ¶ 3.I.D.)  The

---

[1]Phelps is no longer the warden at the VCC.

2

proposal was resubmitted in September 2010 via a letter request from Cole's spiritual leader, Inman Bryan Paynter ("Paynter"), and it was again denied by Phelps. (*Id.*)

In 2010, Phelps implemented a policy that group prayers were not allowed in the housing units and, in November 2010, Paynter submitted a written request to allow group gatherings for prayer in the housing units. (*Id.* at ¶¶ 3.III.A., B.) The request was denied. (*Id.*) Another proposal was submitted in April 2011, and it was denied by Phelps. (*Id.* at ¶ 3.III.C.) Another request was submitted to Pennell for five daily prayers at the chapel when Pennell and/or a security was present, and the request was denied. (*Id.* at ¶ 3.III.D.)

Muslim inmates are no longer allowed to raise fund by selling bean pies, said funds used to pay the obligatory religious taxes, give to charity, purchase Qurans, hadiths, books, and videos, "as needed." (*Id.* at ¶ 3.II.) Phelps' prohibition against the fund-raising "creates an over-whelming burden to [Cole] and all other inmates at the VCC." (*Id.*)

There is discrimination against the Islamic community, as follows: Cole has been prevented from attending Friday services at the proper time and is not given equal time to conduct the services as other faiths are given. (*Id.* at ¶ 3.IV.1.) Phelps denied Cole's requests for a halal diet, but Jewish inmates are provided a kosher diet. (*Id.* at ¶ 3.IV.2.) Cole appealed to the defendant former Commissioner Carl Danberg ("Danberg"), but no action was taken. (*Id.*) Other organizations are allowed to hold an institutional account, but Hosterman denied the Islamic community's request to hold an institutional account. (*Id.* at ¶ 3.IV.3.) Christians are allowed to attend twice yearly religious seminars which are held from 9:00 a.m. to 2:45 p.m. (*Id.* at ¶ IV.4.) The Islamic community requested the same allowances during the month of Ramadan but Pennell and Hosterman only allow them to assembly from 9:00 a.m. to 11:00 a.m. when they

must return to their cells. (*Id.*) Hosterman and Pennell will not allow the Islamic Community to have a paid clerk, even though it is the largest. (*Id.* at ¶ 3.V.5.) Pennell provides the use of a typewriter to Protestant and Catholic communities but refuses to do the same for the Islamic community. (*Id.* at ¶ 3.IV.6.)

## B.    Factual Background

Cole has been a practicing Muslim since 1996. (D.I. 68, ex. A at 18.) He has a prayer rug and a Quran. (*Id.* at 17.) At one time Cole had owned a kufi, but he gave it away because he did not want it. (*Id.*) Cole would like have access to halal meat. (*Id.* at 20-21.) The VCC provides fish entrees as well as vegetarian options. (*Id.* at 19.) Cole testified that vegetarian and fish options do not conflict with his religious beliefs. (*Id.*)

According to Pennell, inmates are allowed to observe religious holidays each year in accordance to facility operational needs that meet their religious obligations. (*Id.* at ex. B.) There is a VCC policy that does not allow inmates to congregate in the housing units for any purpose. (*Id.*) Inmates may gather for prayer on Fridays at Jummah and on Saturday at Taleem services. (*Id.*) Cole testified that he attends services on Fridays and Saturdays for a group gathering of prayer. (*Id.* at ex. A, 13-14.)

Cole observes Ramadan at the VCC. (*Id.* at 19.) Inmates who observe Ramadan gather at 3:00 a.m. to eat together, and they also gather for prayer. (*Id.*) Muslims inmates are provided food on an alternate eating schedule to accommodate the observance of Ramadan. (*Id.*) Inmates are also provided a bag lunch which they may eat in their room. (*Id.*) A May 3, 2011 memo authored by Pennell refers to the authorization of congregational prayer after breakfast and before evening meal during the month of Ramadan. (D.I. 38, ex. A.) It also refers to weekly

4

congregational prayer at Jummah and Taleem services. (*Id.*) In the memo, Pennell advises that inmates may make up their prayers at the end of each day during the last prayer time or throughout the day as an opportunity affords itself. (*Id.*) The memo concludes with "classes, studies, programs, etc. have been granted to all recognized faiths within security requirements and operational needs." (*Id.*)

According to Pennell, inmates are offered a yearly seminar. It is a universal seminar which may be attended by inmates of all faiths. (D.I. 68, ex. B.) Over the years, inmates of all faiths have attended and provide their input in the seminars. (*Id.*) In addition, the Muslin community has various classes, program and services that equal or exceed some other faiths. (*Id.*)

According to Pennell, bean pie fund-raising was discontinued because of an institutional violation that was subject to an investigation. (*Id.*) There are no fund-raising opportunities for any faith. (*Id.*) Inmates may give to charities through their accounts at their discretion. (*Id.*)

During his deposition, Cole asserted that funds are not distributed equally amongst the various religions. (*Id.* at ex. A at 9.) He testified that saw a paper which showed the allocations of funds to each religious organization, but he does not have this document, cannot recall when he saw the document, cannot recall the content of the document, who authored it, or to whom it was sent. (*Id.* at 9-10.)

Cole seeks the employment of a Muslim clerk. (*Id.* at ex. A at 22.) He testified that he uses clerk services that are located at the chapel, that clerks have assisted him, and that he has never had a problem receiving services. (*Id.* at ex. A at 22-23.) According to Pennell, there has

never been discrimination of Muslims for paid positions and through the years there inmates of all faiths have been hired as clerks. (*Id.* at ex. B.)

Cole testified that he never had access to a typewriter while at VCC, but raised the issue because he was unaware if other inmates or the Christian community had access to typewriters. (*Id.* at ex. A at 23-24.)

Cole filed this lawsuit against Danberg, Pennell, Phelps, and Hosterman in their official capacities. During his deposition, Cole testified that he named Pennell as a defendant because "he was the head of the chaplain, head of religious organization." (*Id.* at 9.) Cole is unaware of any decisions made by Pennell that personally impacted him. (*Id.* at 9-10.) Cole named Hosterman as a defendant because he was the head of treatment administration services which includes religion. (*Id.* at 10-11.) Cole is unaware of any decisions made by Hosterman that personally impacted his practice of religion. (*Id.* at 11.) Cole named Phelps as a defendant because he denied requests for an Eid feast and group gatherings for prayer in the housing units. (*Id.* at 13.)

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

7

The Court will not grant the entry of summary judgment without considering the merits of the defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## III. DISCUSSION

### A. Eleventh Amendment

The defendants are sued only in their official capacities. They move for summary judgment to the extent that Cole raised claims against them pursuant to 42 U.S.C. § 1983.[2] The second amended complaint seeks compensatory and punitive damages and declaratory and injunctive relief.

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009) (unpublished). Accordingly, § 1983 claims for monetary damages against a state official in his official capacity are barred by the Eleventh Amendment. *See id.* In addition, RLUIPA does not allow for the recovery of

---

[2]The defendants did not move for summary judgment as to the RLUIPA claims.

8

money damages. *See Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012) (RLUIPA does not permit an action against Defendants in their individual capacities).

However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted). Accordingly, the defendants' motion for summary judgment is granted to the extent that the defendants, in their official capacities, are immune from suit for all monetary claims and denied as to the claims seeking injunctive relief for the alleged ongoing violations of RLUIPA and Cole's constitutional rights as protected by 42 U.S.C. § 1983.

### B. Exhaustion of Administrative Remedies

The defendants move for summary judgment on the grounds that Cole failed to properly exhaust his administrative remedies as is required by the Prison Litigation Reform Act ("PLRA"). The defendants did not provide any evidence to support their position. The second amended complaint alleges that all claims were submitted as grievances by either one individual or several (group grievances) Muslim inmates at the VCC. (D.I. 47, ¶ I.) All grievances were denied and/or deemed non-grievable. (*Id.*) Afterwards, the Islamic leadership appealed several times to each defendant for relief via written correspondence, and they were denied. (*Id.*)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion

9

requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes*, 285 F.3d 287, 295-96 (3d Cir. 2002).

There is no evidence in the record to support the defendants' position that Cole failed to exhaust his administrative remedies on this issue. A mere affidavit would have sufficed. Because it is the defendants' burden to prove the exhaustion defense, *see Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002), the court will deny summary judgment on the grounds of failure to exhaust.

## C.    Statute of Limitations

The defendants argue that Cole's § 1983 claims for discrimination regarding observance of religious holidays, deprivation of funds, denial of a paid clerk, halal meats, and access to a typewriter are time-barred. The original complaint was received and docketed on February 3, 2010 and is considered by the court as filed on January 29, 2010.[3]

---

[3]The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule." The complaint is deemed filed as of the date it it delivered to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988) *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). The original complaint is dated November 20, 2009, and the envelope it was mailed in is post-marked February 2, 2010. Therefore, the original complaint was delivered to prison authorities for mailing some time between November 20, 2009 when it is dated, and February 2, 2010, the date of the postmark of its envelope. No explanation is provided for the lengthy delay from the time the original complaint is dated until it was mailed. Therefore, the court relies upon Fed. R. Civ. P. 6(d) in the computation of time and adds three days prior to the February 2, 2010 postmark, that date being Saturday, January 30, 2010. Because January 30, 2010 falls on a Saturday, the court considers that the original complaint was delivered to prison officials in Delaware for mailing on Friday, January 29, 2010.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. State*, 2001 WL 845654, at \*2 (D. Del. July 24, 2001).

RLUIPA does not contain its own statute of limitations period.[4] However, for civil actions "arising under an Act of Congress enacted after [December 1, 1990]," the appropriate limitations period is four years. 28 U.S.C. § 1658 (2006); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that four year statute of limitations applies if the plaintiff's claim against the defendant was made possible by a post-1990 enactment). See also First Korean Church of N.Y., Inc. v. Cheltenham Twp. Zoning Hearing Bd. & Cheltenham Twp., 2012 WL 645992 (E.D. Pa. Feb. 29, 2012) (explaining, "courts have applied the four-year catch-all statute of limitations of 28 U.S.C. § 1658(a) to RLUIPA claims"), *aff'd*, 2013 WL 362819 (3d Cir. Jan. 24, 2013).

If a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period. *Brenner v. Local*, 514, 927 F.2d 1283, 1295 (3d Cir. 1991). "[T]he "continuing violation doctrine" focuses on "affirmative acts of a defendant," and is not "a means for relieving plaintiffs from their duty to

---

[4]The defendants did not address RLUIPA's statute of limitations.

exercise reasonable diligence in pursuing their claims."[5] *Cowell v. Palmer Twp.*, 263 F.3d 286, 293, 295 (3d Cir. 2001). The continuing violations doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). It is well-settled that the continuing violations doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a claim]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 154 (3d Cir. 1998) (quoting *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)); *see also Lake v. Arnold*, 232 F.3d 360, 366-68 (3d Cir. 2000).

Here, Cole does not allege that he was unaware of the alleged wrongs that occurred in 2004 and 2006. Thus, he was on notice of his alleged injuries stemming from the occurrences in those years before this action was filed in January 2010. Hence, the claims that are time-barred include the § 1983 claims that: (1) Hosterman implemented procedures that prevented Cole from observing Eid al-Fitr and Eid al-Adha when, in 2004, Hosterman stopped food from being brought in by guests and instead ordered the kitchen staff to prepare cake and juice (D.I. 47, ¶ I.A.); and (2) two years later (*i.e.*, 2006), Hosterman stopped cake and juice from being served and ordered the Islamic community to attend evening chow as a group to take the place of a feast and, following the meal, the Muslim inmate was allowed a special visit with family and friends (*Id.* at ¶ I.B.). In addition, the RLUIPA claims based upon the 2004 allegations are time-barred. However, because it is not clear on what date the 2006 claims accrued, the court cannot say that the 2006 RLUIPA claims are also time-barred.

---

[5]The defendants do not address the continuing violation doctrine and, instead, discuss equitable tolling.

For these reasons, the court will grant the defendants' motion for summary judgment for the § 1983 claims predating January 29, 2008 and the RLUIPA claims predating January 29, 2006 as time-barred.

## D.     Religion Claims

Cole raises free exercise of religion, equal protection, and RLUIPA claims. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). When a prisoner claims that his right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). If so, the court must then apply the four-factor test set forth in *Turner v. Safley,* 482 U.S. 78 (1987), to determine whether the curtailment at issue is "reasonably related to penological interests."[6] *DeHart*, 227 F.3d at 51.

---

[6] Four factors determine whether a prison regulation rationally relates to legitimate penological objectives. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). First, there must be a "valid, rational connection" between the regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Second, where inmates have alternative means of exercising the asserted right, courts should be "particularly conscious" of the deference owed to corrections officials in establishing prison regulations. *Id.* at 90. Third, if accommodation of the asserted right will have a significant effect on other inmates, prison staff, or the allocation of prison resources, courts should be particularly deferential to the informed decisions of corrections officials. *Id.* Fourth, an absence of ready alternatives is evidence of the reasonableness of a regulation. *Id.* The burden of persuasion in challenging the reasonableness of a prison regulation ultimately rests on the inmate, but the prison has the "slight" burden of demonstrating the first *Turner* factor. *See Sharp v. Johnson*, 669 F.3d at 156..

13

Cole also raises claims under RLUIPA, alleging a "substantial burden on [his] religious exercise." 42 U.S.C. § 2000cc-1. Under RLUIPA, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 278 (3d Cir. 2007). "A substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Heleva v. Kramer*, 330 F. App'x 406, 409 (3d Cir. 2009) (unpublished) (quoting *Washington v. Klem*, 497 F.3d at 280). If a plaintiff shows that prison administrators' action or inaction has imposed a substantial burden on the exercise of his religion, the administrator must establish that the challenged conduct furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest. *Washington*, 497 F.3d at 283.

The record as it now stands, does not provide facts upon which the court can evaluate the *Turner* factors. Indeed, there is scant evidence regarding the prison policies at issue and the governmental interest put forward to justify them. The record is also void of evidence to enable the court to determine whether Cole's rights were substantially burdened under RLUIPA. Because the court cannot conduct a proper *Turner* or RLUIPA analysis, the motion for summary judgment will be denied without prejudice to renew to further develop the record. *See Daley v. Lappin*, 2014 WL 306932, at *3-4 (3d Cir. Jan. 29, 2014).

14

## IV.    CONCLUSION

For the above stated reasons, the court will grant in part and deny in part the defendants'

motion for summary judgment. (D.I. 67.) The defendants' motion for summary judgment will

be: (1) granted to the extent that the defendants, in their official capacities, are immune from suit

for all monetary claims and denied as to the claims seeking injunctive relief for the alleged

ongoing violations of RLUIPA and Cole's constitutional rights as protected by 42 U.S.C. § 1983;

(2) granted as to 42 U.S.C. § 1983 claims predating January 29, 2008 and RLUIPA claims

predating January 29, 2006 as they are time-barred; and (3) denied in all other respects. The

parties will be given leave to file renewed motions for summary judgment.

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

June 6      , 2014
Wilmington, Delaware

15