IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD COLE, | |
| Plaintiff, | |
| v. | C.A. No. 10-88-CFC |
| CARL DANBERG, et al., | |
| Defendants. | |

FILED

JUL 3 1 2024

U.S. DISTRICT COURT DISTRICT OF DELAWARE

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff Mr. Donald Cole's Motion to Set Aside Settlement Agreement (D.I. 177, the "Motion"),[1] which I recommend be DENIED.

1.  Mr. Cole, a prisoner proceeding *pro se* and *in forma pauperis*, initiated this civil rights action in 2010. (D.I. 1, 4, 47). In 2015, the Court appointed counsel to represent him. (D.I. 88, 89).

2.  The Court referred the case to mediation on November 6, 2019. (D.I. 126). Then-Magistrate Judge Jennifer L. Hall facilitated a mediation with the parties on three separate occasions: March 4, 2020, November 18, 2020, and August 5, 2021.

3.  In September 2021, the parties entered into a Settlement Agreement and Release (D.I. 154-1, Ex. 1, the "Settlement Agreement") resolving all claims against the Delaware Department of Correction ("DDOC"), and Defendants Carl Danberg, Perry Phelps, Frank Pennell, and Ron Hosterman (together, "Defendants"). Among its provisions, the Settlement Agreement requires Defendants to "[a]llow the Eid prayer to be conducted in lieu of Jumu'ah when Eid falls on Jumu'ah, subject to approval of the Imam and any applicable time

---

[1] The Motion was referred to me on July 15, 2024. (D.I. 182).

1

constraints." (*Id.* § 1). The agreement also requires Defendants to "[p]rovide one Halal meal option once a year for Eid, with such meal option to include a Halal meat." (*Id.*).

4. On August 11, 2022, following briefing regarding attorneys' fees and costs (D.I. 147, 148, 153, 156, 159) and a status conference on August 9, 2022, the Court entered a Final Order that, among other provisions, terminated counsel's representation of Mr. Cole, retained ancillary jurisdiction over the enforcement of the Settlement Agreement (which was incorporated by reference into the Final Order), and dismissed the case with prejudice. (D.I. 164).

5. On August 18, 2022, Mr. Cole filed a letter advising the Court that he did not agree to or approve the Settlement Agreement. (D.I. 165, "I did not sign the agreement and I do not authorize Mr. Kittila to sign that agreement on my behalf. Any agreement that purports to represent my acceptance has to be signed by me and not by the attorney who is supposed to be representing me."). In his letter, Mr. Cole also outlined additional items that he would seek to have included in any newly-negotiated agreement. (*Id.*).

6. On August 25, 2022, Mr. Cole filed a letter alleging that Defendants had acted in "violation of the settlement decree" by disciplining certain Muslim inmates for praying in the yard. (D.I. 166). Mr. Cole further requested that the Court treat his letter as a "motion to sanction defendants" for "defendants' violation of the settlement . . . ." (*Id.*).

7. On September 8, 2022, Mr. Cole filed a Rule 60 motion for relief from the Final Order asserting, among other things, that his appointed counsel had committed fraud by agreeing to the Settlement Agreement against his stated wishes and instructions. (D.I. 167). He also argued that Defendants breached the Settlement Agreement by "reneg[ing] upon all stated and implied promises and agreements such that the settlement agreement" was rendered "hollow and meaningless," appearing to suggest that Defendants breached the Settlement Agreement by

cancelling the Eid prayer and refusing to provide Muslim inmates with a Halal meat option for the Eid meal. (*Id.* at 2).

8. On April 6, 2023, Mr. Cole filed a motion to enforce the Settlement Agreement that sought to order Defendants to provide him with a Halal meal option for Eid that contained a Halal meat. (D.I. 172, "Under the Settlement Agreement and Release dated September 20, 2021, under 1. Obligations of Defendants/DDOC defendants agreed to 'Provide one Halal meal option once a year for Eid, with such meal option to include a Halal meat.'"). In response, Defendants asserted that Mr. Cole's motion was premature for failing to comply with the exhaustion requirements set forth in Section 7.13 of the Settlement Agreement.[2] (D.I. 173). Counsel for Defendants took "no position on the truth or falsity of Mr. Cole's allegations regarding breach of the settlement agreement." (D.I. 173 at 2). In a responsive letter, Mr. Cole maintained that he notified the Warden in writing of his concerns and sent a copy of those communications to Defendants, and that he had done "all [he] could do to abide by the terms of the settlement . . . ." (D.I. 174 at 2). In that same letter, Mr. Cole referenced his September 8, 2022 motion, D.I. 167, "complaining that his court appointed counsel entered into this agreement without his authority." (*Id.*).

---

[2] Section 7.13 provides, "Disputes arising under this Agreement shall be brought first in writing to the Warden of the JTVCC, copying counsel for DDOC and Defendants, who shall work in good faith to resolve the same. If not resolved by the Warden, the Parties, shall meet and confer to attempt to resolve the dispute, prior to seeking the assistance of the Court." (D.I. 173; D.I. 154-1, Ex. 1 at § 7.13).

9. On August 23, 2023, the Court denied without prejudice Mr. Cole's Rule 60 motion and motion to enforce the Settlement Agreement. (D.I. 176).³ The Court explained that Mr. Cole cannot "have it both ways" by maintaining that the Settlement Agreement is invalid and should be vacated, while simultaneously asserting that it should be enforced against Defendants in view of their alleged violations. (*Id.* ¶ 8). The Court informed Mr. Cole that he could "decide and inform the Court if he wishes to proceed and, if so, how he would like to proceed." (*Id.*).

10. On August 31, 2023, Mr. Cole filed the instant Motion, stating that he "wishes the court to set aside the Settlement Agreement and allow Plaintiff and Defendants to renegotiate a new Settlement Agreement." (D.I. 177). He further stated that, "Plaintiff's motive was not in any way trying to confuse the Court. Plaintiff was under the impression that until the Court ruled on the Rule 60 motion that Defendants were legally bound by the Settlement Agreement." (*Id.*).

11. Mr. Cole's Motion does not articulate the basis upon which the Settlement Agreement should be set aside. (*Id.*). But, a fair reading of Mr. Cole's various motions, taken together, suggest that the basis for his requested relief is that the Settlement Agreement was entered into without his consent. For example, on January 4, 2024, Mr. Cole filed a Motion for Temporary Restraining Order (D.I. 178) and a Notice of Intent to file TRO and Preliminary Injunction (D.I. 179) arguing that the Settlement Agreement was entered into without his consent, while continuing to maintain that Defendants were in violation of the Settlement Agreement. His TRO filings mirror earlier filings in the case where Mr. Cole took the position

---

³ While these motions remained pending, Mr. Cole filed a Petition for a Writ of Mandamus before the Court of Appeals for the Third Circuit. (D.I. 175). The Third Circuit denied Mr. Cole's petition as moot. *In re Cole*, No. 23-2349, 2023 WL 6635071, at *1 (3d Cir. Oct. 12, 2023).

4

that the Settlement Agreement was entered into without his consent and also that Defendants were in violation of it. (D.I. 165, 167, 174).

12. On June 11, 2024, the Court denied as moot Mr. Cole's motion for a temporary restraining order and preliminary injunction and ordered Mr. Cole's former counsel and Defendants to respond to Mr. Cole's Motion. (D.I. 180). Counsel for Mr. Cole described Mr. Cole's extensive participation in the settlement process and explained that Mr. Cole and Defendants agreed to settle after multiple rounds of mediation facilitated by Judge Hall. (D.I. 181; *see also* D.I. 131, 138, 144). Counsel for Mr. Cole wrote that "Mr. Cole acknowledged his agreement to the settlement to both Judge Hall and me," and that after multiple rounds of edits, "Mr. Cole expressly agreed to, approved, and authorized the signing of the Settlement Agreement." (*Id.* at 2-4). Although Defendants did not timely respond to the Court's June 11, 2024 Order, they later maintained that Mr. Cole failed to meet his burden to show that his counsel did not have authority to settle the matter on his behalf. (D.I. 184). Defendants further argued that, even if Mr. Cole's counsel lacked such authority, Mr. Cole's subsequent actions ratified the Settlement Agreement. (*Id.* at 3-5).

13.     State law governs the enforcement of settlement agreements in federal court. *Allscripts Healthcare, LLC v. Andor Health, LLC*, C.A. No. 21-704-MAK, 2022 WL 3594950, at *8 (D. Del. Aug. 23, 2022). "Delaware law favors settlements and treats them as binding contracts." *Alston v. Pritchett*, No. 382, 2014, 2015 WL 849689, at *2 (Del. 2015); *accord Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997) ("Basic contract principles apply to settlement agreements.").[4] "[A] settlement agreement may be invalidated under certain circumstances such as fraud, illegality, duress, or undue influence." *Id.* (citing *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010) (recognizing Delaware courts will only set aside clear and unambiguous release when it was product of fraud, duress, coercion, or mutual mistake)). "[W]here an attorney of record accepts a settlement offer on behalf of his client, either orally or in writing, a binding contract is created" and the attorney "is presumed to have the lawful authority to make such an agreement." *Williams v. Chancellor Care Ctr. of Delmar*, C.A. No. 06-C05146-MMJ, 2009 WL 1101620, at *3 (Del. Super. Ct. Apr. 22, 2009). "While an attorney lacks the inherent authority to accept a settlement offer, an attorney acquires lawful authority when the client either gives special authority or subsequently ratifies the agreement." *Id.* (citing *Aiken v. Nat'l Fire Safety Counsellors*, 127 A.2d 473, 475 (Del. Ch. 1956)). Mr. Cole bears the burden to rebut a presumption of lawful authority. *Id.*

---

[4] The Settlement Agreement is governed by Delaware law. (Dl. 154-1, Ex. 1 § 7.2).

14. Mr. Cole has not met his burden to rebut the presumption of lawful authority afforded to the Settlement Agreement.[5] Other than vague, conclusory, and unsupported claims that the Settlement Agreement was signed without his "consent" or "authority" (D.I. 165, 178, 179), Mr. Cole's adduces no evidence from which I could conclude that his counsel lacked lawful authority to sign the Settlement Agreement on Mr. Cole's behalf. Despite multiple opportunities to assert *how* or *why* his counsel lacked authority to enter into the Settlement Agreement, Mr. Cole has simply maintained that his counsel did not have such authority, and also that the Settlement Agreement should be enforced. Indeed, Mr. Cole appears to have conceded that he assented to its terms. (*See, e.g.*, D.I. 174 at 2, "Your honor, I shouldn't have had to file a motion to enforce the settlement since the Defendants and their counsel – supposedly in good faith – *agreed to do what we agreed upon* and to this point have not fulfilled any part of it.") (emphasis added). Moreover, Mr. Cole's former counsel set forth a detailed recitation of the negotiation process culminating in the Settlement Agreement, including his representation to the Court that "Mr. Cole acknowledged his agreement to the settlement to both Judge Hall and me." (D.I. 181). In light of that detailed recitation, Mr. Cole's repeated

---

[5] Liberally construing his *pro se* filing, *see Erickson v. Pardus*, 551 U.S. 89 (2007), I could interpret Mr. Cole's Motion as seeking relief under Rule 60. But Mr. Cole has not established "fraud" within the meaning of Rule 60(b) or "fraud on the court" under Rule 60(d)(3). *See, e.g., Roscoe v. Watco Companies, LLC*, C.A. No. 15-2118, 2018 WL 8345101, at *3 (E.D. Pa. Nov. 9, 2018), *report and recommendation adopted*, C.A. No. 15-2118, 2019 WL 2211855 (E.D. Pa. May 20, 2019). He has presented no evidence of fraud whatsoever. *Jackson v. Ivens*, C.A. No. 01-559-LPS, 2013 WL 4041335, at *3 (D. Del. Aug. 2, 2013), *aff'd*, 565 F. App'x 115 (3d Cir. 2014). Nor does Mr. Cole's change of heart entitle him to right relief from final judgment for "any other reason that justifies relief" under the catch-all residual provision of Rule 60(b)(6). *See DeMatthews v. The Hartford Ins. Co.*, 402 F. App'x 686, 689 (3d Cir. 2010) (*quoting Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002)) ("It is clear that a party who is simply 'trying to escape the effects of a bargain [he] regretted in hindsight' has not demonstrated exceptional circumstances sufficient to warrant reopening under Rule 60(b)(6).").

conclusory statements provide no basis for this Court to find that his counsel lacked the authority to enter into the Settlement Agreement.

15. Alternatively, even if there were some question whether Mr. Cole's counsel was authorized to sign the Settlement Agreement, Mr. Cole's actions show that he nevertheless ratified the Settlement Agreement by seeking to enforce its terms. Ratification requires "[k]nowledge, actual or imputed, of all material facts" and "may be implied from conduct, as well as expressed by words." *Frank v. Wilson & Co., Inc.*, 32 A.2d 277, 283 (Del. 1943). At D.I. 174, p. 2, Mr. Cole wrote: "As I have done all I could do to abide by the terms of the settlement and to respectfully ask that the Warden and Mr. Senato comply with the settlement's terms . . . ." He further wrote that, in the Settlement Agreement, Defendants "agreed to do what we agreed upon." (*Id.*). At D.I. 167, Mr. Cole argued that Defendants breached the Settlement Agreement by failing to honor their "stated and implied promises and agreements." And at D.I. 172, Mr. Cole filed a "Motion to Enforce the Settlement Agreement," where he asked the Court to "order Defendants to provide the halal meat Eid meals as per the Settlement Agreement."

16. Finally, I note that the Settlement Agreement was executed in September 2021. (D.I. 154-1, Ex. 1). Mr. Cole first objected to it by way of his August 18, 2022 letter—nearly a year after he agreed to the terms of the Settlement Agreement. *Williams*, 2009 WL 1101620, at *3 (finding that plaintiff acted untimely and insufficiently to render contract unenforceable when she objected two months after settlement agreement was accepted); *In re M.M.*, C.A. No. 15850-VCG, 2013 WL 1415837, at *3 (Del. Ch. Apr. 4, 2013) ("A parties' regretting entering into a settlement agreement is not a ground for rescission, particularly where the remorse only emerges in legally cognizable form months after the execution of the agreement and after changes in position conditioned upon the agreement.").

17. Mr. Cole's apparent change of heart seeking to resolve his case with different terms (D.I. 165, requesting, among other items, "the latest version of the PlayStation . . . in sufficient supplies that everyone in the Vaughn prison can purchase one if he so chooses;" D.I. 177, requesting that the Court "allow Plaintiff and Defendants to renegotiate a new Settlement Agreement") is not a valid reason to set aside a binding contractual settlement agreement. *Allscripts Healthcare*, 2022 WL 3594950, at *6 ("[Plaintiff] changed his mind on the agreed-upon six-month period of the non-compete. His change of mind does not change his consent to a six month non-compete."). Mr. Cole's failure to timely object, coupled with his actions to enforce the Settlement Agreement, and his admission that the document represents "what we agreed upon," make a clear case for ratification.

18. Accordingly, I recommend that Mr. Cole's Motion be denied.

19. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

20. The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: July 31, 2024

Laura D. Hatcher
United States Magistrate Judge